UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------

| | |
|---|---|
| JEWELTEX MANUFACTURING INC. RETIREMENT PLAN, | Case No. _____ |
| Plaintiff, | |
| v. | **COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |
| KANSAS CITY SOUTHERN, LYDIA I. BEEBE, LU M. CÓRDOVA, ROBERT J. DRUTEN, ANTONIO O. GARZA, JR., DAVID GARZA-SANTOS, JANET H. KENNEDY, MITCHELL J. KREBS, HENRY J. MAIER, THOMAS A. MCDONNELL, and PATRICK J. OTTENSMEYER, | JURY TRIAL DEMANDED |
| Defendants. | |

---------------------------------------------------------

Plaintiff Jeweltex Manufacturing Inc. Retirement Plan ("Plaintiff"), by and through its undersigned counsel, for its complaint against defendants, alleges upon personal knowledge with respect to itself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE AND SUMMARY OF THE ACTION

1.      This action is brought by Plaintiff against Kansas City Southern ("KCS" or the "Company") and the members of KCS's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, and to enjoin the vote on a proposed transaction, pursuant to which KCS will merge with Canadian National Railway Company ("CN") through CN's subsidiary Brooklyn Merger Sub, Inc. ("Merger Sub") (the "Proposed Transaction").

2.      On May 21, 2021, KCS and CN issued a joint press release announcing that they had entered into an Agreement and Plan of Merger dated May 21, 2021 (the "Merger Agreement").  Under the terms of the Merger Agreement, each KCS shareholder will be entitled to receive 1.129 CN common shares and $200.00 in cash for each share of KCS common stock they own.  Upon completion of the Proposed Transaction, it is expected that former holders of KCS common stock and KCS preferred stock will own approximately 12.65% of the combined company, with former CN shareholders owning approximately 87.35%.  The Proposed Transaction is valued at approximately $33.6 billion.

3.      On July 7, 2021, KCS filed a Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC.  The Proxy Statement, which recommends that KCS stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things, the Company's and CN's financial projections and the financial analyses supporting the fairness opinions provided by the Company's financial advisors, Morgan Stanley & Co. LLC ("Morgan Stanley") and BofA Securities, Inc. ("BofA").  The failure to adequately disclose such material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act as KCS stockholders need such information in order to make a fully informed decision whether to vote in favor of the Proposed Transaction or seek appraisal.

4.      In short, unless remedied, KCS's public stockholders will be forced to make a voting or appraisal decision on the Proposed Transaction without full disclosure of all material information concerning the Proposed Transaction being provided to them.  Plaintiff seeks to enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

**JURISDICTION AND VENUE**

5.      This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6.      This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District.  Moreover, KCS's common stock trades on the New York Stock Exchange, which is headquartered in this District, rendering venue in this District appropriate.

**THE PARTIES**

8.      Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of KCS.

9.      Defendant KCS is a Delaware corporation, with its principal executive offices located at 427 West 12th Street, Kansas City, Missouri 64105.  KCS is a transportation holding company that has railroad investments in the U.S., Mexico and Panama.  KCS's shares trade on the New York Stock Exchange under the ticker symbol "KSU."

10.     Defendant Lydia I. Beebe ("Beebe") has been a director of the Company since 2017.

11.     Defendant Lu M. Córdova ("Córdova") and has been a director of the Company since 2010.

12.    Defendant Robert J. Druten ("Druten") is Chairman of the Board and has been a director of the Company since 2004.

13.    Defendant Antonio O. Garza, Jr. ("Garza") has been a director of the Company since 2010.

14.    Defendant David Garza-Santos ("Garza-Santos") has been a director of the Company since 2016.

15.    Defendant Janet H. Kennedy ("Kennedy") has been a director of the Company since 2019.

16.    Defendant Mitchell J. Krebs ("Krebs") has been a director of the Company since 2017.

17.    Defendant Henry J. Maier ("Maier") has been a director of the Company since 2017.

18.    Defendant Thomas A. McDonnell ("McDonnell") has been a director of the Company since 2003.

19.    Defendant Patrick J. Ottensmeyer ("Ottensmeyer") has been Chief Executive Officer ("CEO") of the Company since July 1, 2016, President since March 1, 2015, and a director since 2016.

20.    Defendants identified in paragraphs 10-19 are referred to herein as the "Board" or the "Individual Defendants."

## OTHER RELEVANT ENTITIES

21.    CN is a Canadian corporation, with its principal executive offices located at 935 de La Gauchetière Street West, Montreal, Quebec, Canada H3B 2M9.  CN is engaged in the rail and related transportation business.  CN's network of 19,500 route miles of track spans Canada and

the U.S. and is the only railroad connecting Canada's Eastern and Western coasts with the U.S.

South. CN's shares trade on the New York Stock Exchange under the ticker symbol "CNI."

22.     Merger Sub is a Delaware corporation and wholly owned subsidiary of CN.

## SUBSTANTIVE ALLEGATIONS

**Background of the Company**

23.     KCS is a holding company with domestic and international rail operations in North

America.  Its rail operations are strategically focused on the growing north/south freight corridor

connecting key commercial and industrial markets in the central U.S. with major industrial cities

in Mexico.  KCS's wholly owned and controlled subsidiary, KCSR, is a U.S. Class 1 railroad

founded in 1887.  KCSR serves a ten-state region in the Midwest and southeast regions of the U.S.

and has the shortest north/south rail route between Kansas City, Missouri and several key ports

along the Gulf of Mexico in Alabama, Louisiana, Mississippi and Texas.

24.     KCS also controls and owns all stock of Kansas City Southern de México, S.A. de

C.V. ("KCSM").  Through its 50-year concession from the Mexican government, which could

expire in 2047 unless extended, KCSM operates a key commercial corridor of the Mexican railroad

system and has as its core route the most strategic portion of the shortest, most direct rail

passageway between Mexico City and Laredo, Texas.  Laredo is a principal international gateway

through which a substantial portion of rail and truck traffic between the U.S. and Mexico crosses

the border.  KCSM serves most of Mexico's principal industrial cities and three of its major

seaports.  KCSM's rail lines provide exclusive rail access to the U.S. and Mexico border crossing

at Nuevo Laredo, Tamaulipas.  Under the concession, KCSM has the right to use and operate the

southern half of the rail bridge at Laredo, Texas, which spans the Rio Grande River between the

U.S. and Mexico.  KCS owns the northern half of this bridge through its ownership of Mexrail,

Inc. ("Mexrail").  KCSM also provides exclusive rail access to the port of Lazaro Cardenas on the Pacific Ocean.

25.    KCS wholly owns Mexrail which, in turn, wholly owns The Texas Mexican Railway Company ("Tex-Mex").  Tex-Mex owns a 160-mile rail line extending from Laredo, Texas to the port city of Corpus Christi, Texas, which connects the operations of KCSR with KCSM.  The KCS coordinated rail network (KCSR, KCSM and Tex-Mex, including trackage rights) comprises approximately 7,100 route miles extending from the Midwest and southeast regions of the U.S. south into Mexico and connects with all other Class 1 railroads, providing shippers with an effective alternative to other railroad routes and giving direct access to Mexico and the southeast and southwest U.S. through alternate interchange hubs.

26.    On March 11, 2021, the Company announced its second quarter 2021 financial results and business developments.  Second quarter revenues were $749.5 million, an increase of 37% from second quarter 2020 revenues of $547.9 million.  Overall, carload volumes were up 31% compared to the prior year.  Adjusted net income for the quarter reached $188.8 million, as compared to $109.7 million for the corresponding quarter of the prior year.  Commenting on the Company's results, defendant Ottensmeyer stated, in relevant part:

> KCS delivered strong second quarter volume growth, as our franchise benefited from unique growth drivers and the economy recovered from the COVID-19 downturn.  Although we are pleased with the strong volume growth, we fell short of our own expectations for customer service.
>
> Our operating team is focused on implementing structural and sustainable changes that will improve operational performance and the resiliency of our network.  To that end, we have deployed additional assets and crews in support of our service recovery, setting the Company up to continue delivering robust volume growth while improving customer service in the second half of 2021.
>
> During the second quarter, KCS also announced a pro-competitive merger with Canadian National, which will deliver more choices to customers through the creation of new, single line service options between the U.S., Canada and Mexico.

This combination represents an exciting opportunity for KCS and CN stakeholders, and we look forward to delivering a safer, faster, cleaner and stronger railroad.

**The Proposed Transaction**

27.     On May 21, 2021, KCS and CN issued a joint press release announcing the

Proposed Transaction, which states, in relevant part:

MONTREAL and KANSAS CITY, Mo., May 21, 2021 -- CN (TSX: CNR, NYSE: CNI) and Kansas City Southern (NYSE: KSU) ("KCS") today announced that they have entered into a definitive merger agreement to create the premier railway for the 21st century.

Under the terms of the agreement, which was unanimously approved by the Board of Directors of each company, KCS shareholders will receive $3252 per common share based on CN's May 13, 2021 offer, which implies a total enterprise value of $33.6 billion, including the assumption of approximately $3.8 billion of KCS debt. KCS shareholders will receive $200 in cash and 1.129 shares of CN common stock for each KCS common share, with KCS shareholders expected to own 12.6% of the combined company.   This represents an implied premium of 45% when compared to KCS' unaffected closing stock price on March 19, 2021.   KCS' preferred shareholders will receive $37.50 in cash for each preferred share.

"We are thrilled that KCS has agreed to combine with CN to create the premier railway for the 21st century.  I would like to thank the numerous stakeholders of both companies who have demonstrated overwhelming support for this compelling combination, and we look forward to delivering the many benefits of this pro-competitive transaction to them.  I am confident that together with KCS' experienced and talented team, we will meaningfully connect the continent – enhancing competition, offering more choice for customers, and driving environmental stewardship and shareholder value."

          - JJ Ruest, president and chief executive officer of CN

"As North America's most customer-focused transportation provider, we are excited about this combination with CN, which will provide customers access to new single-line transportation services at the best value for their transportation dollar, and increase competition among the Class 1 railroads.  Our companies' cultures are strongly aligned, and we share a commitment to environmental stewardship, safe operations, reliable service and outstanding performance.  As a larger continental enterprise with complementary routes and an enhanced platform for revenue growth, capital investment, and job creation, we will be positioned to deliver on the transaction's powerful synergies which will create new growth opportunities for our customers, employees, labor partners, communities and shareholders."

     - Patrick J. Ottensmeyer, president and chief executive officer of KCS

"KCS is the ideal partner for CN to connect the continent, helping to drive North American trade and economic prosperity.  We are confident in our ability to gain the necessary regulatory approvals and complete the combination with KCS, and we look forward to combining with KCS to create new opportunities, more choice and a stronger company."

     - Robert Pace, chair of the board of CN

**Compelling Strategic and Financial Rationale**

***Creates the premier railway for the 21st century***. The combination of CN and KCS will further accelerate CN's industry-leading growth profile by connecting North America's industrial corridor to create new options for shippers and new revenue for the combined company. A CN-KCS combination will substantially help realize the many benefits of the USMCA, bringing it to life in a meaningful way.

***Brings together highly complementary networks to benefit customers.***  CN and KCS will create a safer, faster, cleaner and stronger railway that is ideally positioned to support the growth of an emerging consumption-based economy through better service options and customer choice.

**Enhances competition.**  This combination will create an express route that connects the U.S., Mexico and Canada with a seamless single-owner, single-operator service, and preserves access to all existing gateways to enhance route choices and ensure robust price competition.

***Delivers significant value to KCS shareholders.***  CN's proposal delivers an implied premium of 45% to KCS shareholders, as well as participation in the significant upside of the combined company.  Additionally, KCS shareholders will have the ability to receive the merger consideration immediately upon the closing of CN's voting trust, which is expected to be in the second half of 2021.  This combination will also significantly expand the combined company's total addressable market ("TAM") – CN and KCS would target $8 billion of TAM opportunity while supporting growth across the rapidly growing USMCA network.

***Presents compelling synergies and pro-forma financial metrics.*** CN currently estimates that the combination would result in EBITDA synergies approaching $1 billion annually, with the vast majority of synergies coming from additional revenue opportunities.  CN anticipates the transaction to be accretive to CN's adjusted diluted earnings per share in the first full year following CN assuming control of KCS.

***Accelerates innovation.*** CN and KCS share cultures that value safety, service and environmental stewardship. CN and KCS will accelerate innovation and investment as CN brings its industry-leading safety technology and fuel efficiency to the KCS network.

***Yields demonstrable benefits for the environment.*** The combination will yield demonstrable benefits for the environment by converting significant volumes of truck traffic onto rails, delivering better fuel efficiency at lower cost. CN has the ability to remove more than 300 trucks from the road with every additional freight train. Because trains are 4 to 5 times more fuel-efficient than trucks, the combined company will also have an opportunity to realize a 75% reduction in greenhouse gas emissions, resulting in cleaner air for local communities along CN's line. While preventing thousands of tons of emissions from entering the atmosphere every day, the expected conversion of truck traffic to rails will also reduce traffic congestion in these regions.

***Creates opportunities for local communities.*** Upon the closing of the transaction, CN will maintain corporate headquarters in Montreal, Canada, and establish Kansas City, Missouri, as the combined company's United States headquarters. The Mexico headquarters will remain in Mexico City and the operations center in Monterrey. CN will make significant infrastructure investments in key communities across the new network, including Illinois, Missouri, Michigan, Louisiana and Texas, meaning more economic opportunity and more jobs.

**Financing**

The cash portion of the consideration will be funded through a combination of cash-on-hand and approximately $19 billion of new debt. Upon closing of the transaction and including the assumption of approximately $3.8 billion of KCS debt, we expect to have outstanding debt of approximately $33 billion, representing a leverage ratio of 4.5x pro forma 2021 EBITDA3, and we expect to maintain an investment grade credit rating. Based on the proposed exchange ratio and CN's current quarterly dividend of C$0.615 per CN share, KCS shareholders are expected to receive the equivalent of $2.30 in annual dividends per KCS share.

**Approvals and Timing**

CN and KCS are confident in their ability to obtain all necessary regulatory approvals, including from the Surface Transportation Board ("STB") and the Federal Economic Competition Commission (COFECE) and Federal Telecommunications Institute (IFT) in Mexico.

CN has proposed a "plain vanilla" voting trust. Upon KCS shareholder approval of the transaction, and satisfaction of customary closing conditions, CN will acquire KCS shares and place them into the voting trust. KCS shareholders will receive

the merger consideration immediately upon the closing of CN's voting trust, which is expected to be in the second half of 2021.

Following this step, the STB and other regulatory authorities must approve CN's control of KCS.  The completion of the transaction is expected to take place in the second half of 2022.  Upon completion, CN and KCS will begin the integration process to realize the significant benefits of the combination for their stakeholders.

***

**Advisors**

J.P. Morgan and RBC Capital Markets are acting as CN's financial advisors, and Centerview Partners LLC is also serving as a financial advisor.  Cravath, Swaine & Moore LLP, Sidley Austin LLP, Norton Rose Fulbright LLP, Torys LLP, Agon and Stikeman Elliot LLP are providing legal counsel to CN.

BofA Securities and Morgan Stanley & Co. LLC are serving as financial advisors to Kansas City Southern.  Wachtell, Lipton, Rosen & Katz, Baker & Miller PLLC, Davies Ward Phillips & Vineberg LLP, WilmerHale, and White & Case, S.C. are serving as legal counsel to Kansas City Southern.

## Insiders' Interests in the Proposed Transaction

28.     KCS insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders.  The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of KCS.

29.     Notably, Company insiders stand to receive substantial financial compensation for securing the deal with CN.  Pursuant to the Merger Agreement, all outstanding Company options, restricted share awards, performance shares awards and director deferred stock will be subject to accelerated vesting.

30.     Moreover, Company insiders stand to receive substantial financial compensation in the form of retention awards.  KCS has granted retention awards in the amount of $2,120,000, $1,082,000, $1,076,000, and $1,018,000 to each of defendant Ottensmeyer, Michael W. Upchurch,

Jeffrey M. Songer and Michael J. Naatz, respectively.  KCS has granted retention awards equal to $4,384,500 in the aggregate to the KCS executive officers who are not named executive officers.

31.      In addition, if they are terminated in connection with the Proposed Transaction, KCS insiders stand to receive substantial cash severance payments, as set forth in the following table:

| Named Executive Officer | | Golden Parachute Compensation Table | | | |
| --- | --- | --- | --- | --- | --- |
| | Cash ($)[1] | Equity ($)[2] | Benefits ($)[3] | Make Whole Payments ($)[4] | Total ($) |
| Patrick J. Ottensmeyer | 9,768,553 | 32,581,903 | 33,837 | 14,480,345 | 56,864,638 |
| Michael W. Upchurch | 4,192,379 | 7,631,494 | 51,558 | 4,131,966 | 16,007,397 |
| Jeffrey M. Songer | 3,299,340 | 8,526,634 | 51,558 | 3,776,085 | 15,653,617 |
| Brian D. Hancock[5] | — | — | — | — | — |
| Michael J. Naatz | 2,985,808 | 7,460,656 | 51,508 | 3,501,376 | 13,999,348 |

## The Proxy Statement Contains Material Misstatements or Omissions

32.      Defendants filed a materially incomplete and misleading Proxy Statement with the SEC and disseminated it to KCS's stockholders.  The Proxy Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote in favor of the Proposed Transaction or seek appraisal.

33.      Specifically, as set forth below, the Proxy Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning the Company's and CN's financial projections and the financial analyses supporting the fairness opinions provided by the Company's financial advisors, Morgan Stanley and BofA.

### *Material Omissions Concerning the Company's and CN's Financial Projections and Morgan Stanley's and BofA's Financial Analyses*

34.      The Proxy Statement omits material information regarding the Company's and CN's financial projections.

35.      For example, with respect to KCS's financial projections, the Proxy Statement fails to disclose the line items underlying: (i) EBITDA; and (ii) unlevered free cash flow.

36.     Additionally, with respect to CN's financial projections, the Proxy Statement fails to disclose the line items underlying: (i) adjusted EBITDA; and (ii) unlevered free cash flow.

37.     The Proxy Statement also omits material information regarding Morgan Stanley's and BofA's financial analyses.

38.     The Proxy Statement describes Morgan Stanley's and BofA's fairness opinions and the various valuation analyses performed in support of their opinions.  However, the description of Morgan Stanley's and BofA's fairness opinions and analyses fails to include key inputs and assumptions underlying these analyses.  Without this information, as described below, KCS's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Morgan Stanley's and BofA's fairness opinions in determining whether to vote in favor of the Proposed Transaction or seek appraisal.

39.     With respect to Morgan Stanley's *Discounted Cash Flow Analysis* of KCS, the Proxy Statement fails to disclose: (i) quantification of the inputs and assumptions underlying the discount rates ranging from 6.4% to 7.6%; (ii) the metric to which the terminal multiples were applied to derive the terminal value and quantification thereof; and (iii) quantification of KCS's terminal value.

40.     With respect to Morgan Stanley's *Equity Research Analysts' Price Targets* analysis of KCS, the Proxy Statement fails to disclose: (i) the individual price targets observed; and (ii) the sources thereof.

41.     With respect to Morgan Stanley's *Discounted Equity Value Analysis* of KCS, the Proxy Statement fails to disclose: (i) quantification of the inputs and assumptions underlying the discount rate of 7.8%; and (ii) quantification of KCS's terminal value.

42.     With respect to Morgan Stanley's *Discounted Cash Flow Analysis* of CN, the Proxy Statement fails to disclose: (i) quantification of the inputs and assumptions underlying the discount rates ranging from 5.5% to 6.8%; (ii) the metric to which the terminal multiples were applied to derive the terminal value and quantification thereof; and (iii) quantification of CN's terminal value.

43.     With respect to Morgan Stanley's *Equity Research Analysts' Price Targets* analysis of CN, the Proxy Statement fails to disclose: (i) the individual price targets observed; and (ii) the sources thereof.

44.     With respect to BofA's *Discounted Cash Flow Analysis* of KCS, the Proxy Statement fails to disclose: (i) KCS's normalized free cash flows in the terminal year; (ii) KCS's net debt; (iii) KCS's preferred equity and minority interest; (iv) KCS's fully-diluted outstanding shares; (v) quantification of the inputs and assumptions underlying the discount rates ranging from 6.0% to 7.5%; and (vi) quantification of KCS's terminal value.

45.     With respect to BofA's *Wall Street Analysts Price Targets* analysis of KCS, the Proxy Statement fails to disclose: (i) the individual price targets observed; and (ii) the sources thereof.

46.     With respect to BofA's *Present Value of Future Stock Price* analysis of KCS, the Proxy Statement fails to disclose: (i) quantification of the inputs and assumptions underlying the discount rates of 7.7%; and (ii) and KCS's expected future dividend payments.

47.     With respect to BofA's *Discounted Cash Flow Analysis* of CN, the Proxy Statement fails to disclose: (i) CN's normalized free cash flows in the terminal year; (ii) CN's net debt; (iii) CN's net pension assets; (iv) CN's fully-diluted outstanding shares; (v) quantification of the inputs and assumptions underlying the discount rates ranging from 5.5% to 7.0%; and (vi) quantification of CN's terminal value.

48.     With respect to BofA's *Wall Street Analysts Price Targets* analysis of CN, the Proxy Statement fails to disclose: (i) the individual price targets observed; and (ii) the sources thereof.

49.     Without such undisclosed information, KCS's stockholders cannot evaluate for themselves whether the financial analyses performed by Morgan Stanley and BofA were based on reliable inputs and assumptions or whether they were prepared with an eye toward ensuring that positive fairness opinions could be rendered in connection with the Proposed Transaction.  In other words, full disclosure of the omissions identified above is required in order to ensure that stockholders can fully evaluate the extent to which Morgan Stanley's and BofA's opinions and analyses should factor into their decision whether to vote in favor of the Proposed Transaction or seek appraisal.

50.     The omission of this material information renders the statements in the "KCS Unaudited Prospective Financial Information," "Opinion of Morgan Stanley," and "Opinion of BofA Securities" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

51.     The Individual Defendants were aware of their duty to disclose this information and acted negligently (if not deliberately) in failing to include this information in the Proxy Statement.  Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other KCS's stockholders will be unable to make an informed decision whether to vote in favor of the Proposed Transaction or seek appraisal and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**Claims Against All Defendants for Violations of Section 14(a) of the**
**Exchange Act and Rule 14a-9 Promulgated Thereunder**

52.      Plaintiff repeats all previous allegations as if set forth in full.

53.      During the relevant period, defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

54.      By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy Statement.  The Proxy Statement was prepared, reviewed, and/or disseminated by the defendants.  It misrepresented and/or omitted material facts, including material information about KCS's and CN's financial projections and the financial analyses performed by the Company's financial advisors.  The defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

55.      The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.

56.      By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

57.      Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate.  Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## <u>COUNT II</u>

**Claims Against the Individual Defendants for Violations**
**of Section 20(a) of the Exchange Act**

58.     Plaintiff repeats all previous allegations as if set forth in full.

59.     The Individual Defendants acted as controlling persons of KCS within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of KCS, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

60.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

61.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.  The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were, thus, directly involved in the making of the Proxy Statement.

62.     In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction.  The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

63.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

64.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein.   By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of defendants' conduct, KCS stockholders will be irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in its favor on behalf of KCS, and against defendants, as follows:

A.     Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to KCS stockholders;

B.     In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.     Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

D.     Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.     Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.


Dated:  August 5, 2021                          **WEISSLAW LLP**


By _____
     Richard A. Acocelli
     1500 Broadway, 16th Floor
     New York, New York 10036
     Tel: (212) 682-3025
     Fax: (212) 682-3010
     Email: racocelli@weisslawllp.com

     *Attorneys for Plaintiff*